UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| CHARLOTTE OWENS, | ) | |
| Plaintiff | ) | |
| | ) | |
| V. | ) | NO. 2:04-CV-274 |
| | ) | |
| WELLMONT, INC. and/or d/b/a | ) | |
| WELLMONT HOLSTON VALLEY | ) | |
| MEDICAL CENTER, | ) | |
| Defendant | ) | |

## <u>MEMORANDUM OPINION</u>

This age discrimination case under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq*., and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-101 *et seq*., is before the Court on the motion of the defendant for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons which follow, the motion will be granted.

## I.    Factual Background

Charlotte Owens ("Owens") was employed by Wellmont, Inc. d/b/a Wellmont Holston Valley Medical Center ("Wellmont") from May 1970 until her termination on June 23, 2003 (effective July 23, 2003). At the time of her termination, Owens was 54 years of age and employed as a physical therapy technician ("PTT" or "technician") in Wellmont's inpatient physical therapy department. From 1996 until

her termination, Owens' supervisor was Jose Vivaldi ("Vivaldi"), the system director for inpatient rehabilitation services for Wellmont.

In May 2003, a budgetary review, which included a productivity analysis, was conducted to determine whether the inpatient department was over- staffed with PTTs. This review revealed that the department was overstaffed with technicians and established a need to hire more licensed physical therapy assistants ("LPTA" or "assistants"), which would allow Wellmont to bill for more services than it could with PTTs. According to Wellmont, it then decided, as a result of the review and in order to meet budgetary restraints, to reduce the number of technicians in the inpatient department by eliminating one open PTT position and by laying off two full- time employees. In order to determine which employees would be laid off, Vivaldi formed a leadership team consisting of himself, Clayton Chapman, an occupational therapist, Linda Gemayel, a speech and hearing therapist, and Michelle Henry, a physical therapist.[1] The leadership team evaluated the PTTs on five job-related criteria set forth in Wellmont's policy on temporary/permanent force reductions: 1) years of service; 2) performance; 3) dependability/reliability; 4) flexibility; and 5) job criticality.

The technicians in the inpatient department were given a score from 1 to

---

[1] As discussed *infra*, Owens claims that formation of the leadership team was not authorized by Wellmont's reduction in force policy and was part of Wellmont's "pretext" for discrimination.

5 on each of these job related criterion, with one being the lowest and five being the highest, except for years of service, which was scored from 1 to 3. Technicians with greater seniority received higher scores on the years of service criterion. The scores were averaged and the technicians ranked from highest to lowest average score. Owens received the fifth lowest score of the six technicians. Two of those who received higher scores than Owens were over 50 years old. The decision was made to eliminate the positions of those with the lowest scores, that of Owens and a male technician, Mike Corder, who was less than 30 years of age at the time. According to Vivaldi, Owens' age was neither a factor nor a consideration in the decision to eliminate Owens' position. Owens was informed of Wellmont's decision on June 24, 2003, by Vivaldi and Mack Lowe ("Lowe"), Human Resources Specialist.[2]

It was the practice of Wellmont, during any reduction in force, to work with displaced employees to place them in other departments at the hospital. Wellmont's reduction in force policy, however, does not provide any recall rights. At the time Corder was told of the decision to eliminate his position, he was given the option to transfer to another position and he accepted a position as a linen distribution clerk in the environmental services department. Owens was not offered a transfer on June 24; however, she inquired about the possibility of working part time in the

---

[2] Although informed of Wellmont's decision on June 24, Owens' termination letter was dated June 23.

inpatient department. At this point, the accounts of the parties about what happened diverge significantly.

Wellmont claims that Lowe began immediately, during the June 24 meeting, to place Owens in another position at the hospital, calling Carol Forrest ("Forrest"), manager of the hospital's central sterile processing department while Owens was still in his office, to inquire about a possible opening. Forrest had an opening at the same pay grade as Owens' previous position and indicated she would like to interview Owens. According to Lowe, Owens was informed of the opening and was supposed to meet with Forrest the next day. Owens did not appear to meet with Forrest, never contacted Forrest and expressed no further interest in the position. Wellmont contends that Owens "likely would have been offered" the position, if she had pursued it.

Owens, on the other hand, claims she asked Lowe about part-time work and was told nothing was available. She denies that Lowe ever told her about a possible opening in central sterile processing. Owens claims she met with Lowe two days after her termination and again asked about part-time or Registry work to fill in for PTTs on their days off and vacation.[3] Lowe again said there was "nothing" for her. At Owens' request, Lowe made an appointment for Owens to meet with Rhonda

_____

[3] Registry employees are part of the hospital's supplemental staff, used to meet customer needs or to resolve special employment situations.

McGhee ("McGhee"), supervisor of patient care.

The parties agree that Owens talked with McGhee about an opening in patient care. Owens had previously worked in patient care and was believed qualified to perform the duties of the position. The job was offered to Owens, she indicated she would take the position and a work schedule was prepared for her, which required three twelve (12) hour shifts per week rather than the five eight (8) hour shifts she had previously worked. Vivaldi was informed by Lowe that Owens had been hired for the opening. Believing she "could [not] physically perform at [her] best" on this schedule, Owens later declined the position.[4] This position would have been at the same pay grade as Owens' prior position.[5]

Once again, the parties' accounts of what happened next show substantial disagreement. According to Wellmont, plaintiff was then offered a Registry position which would have allowed Owens to work twenty (20) hours per week in the inpatient department. Admittedly, this position was not the same as her former position. Owens was also informed that the inpatient department was not hiring any new PTTs and any new hires in the department would be LPTAs. Owens, according to

---

[4]  Wellmont claims Owens "never reported to work." Owens agrees but claims she told Wellmont she was declining the position.

[5]  In her response to "Defendant's Concise Statement of Undisputed Facts," Owens denies that the pay grade would have been the same; however, she points to nothing in the record which disputes this fact.

Wellmont, declined the offer "because she did not want to work with Mr. Vivaldi." On the other hand, and not surprisingly, Owens denies that she even discussed the position or was ever offered the position.

In August or September 2003, the inpatient department posted an opening for a PTT to replace a departing PTT. Vivaldi, after a conversation with Wellmont's vice president, during which he was reminded of the productivity analysis, however, requested that the posting be changed to one for a LPTA.[6] A 26 year old LPTA was hired by Wellmont for the position as a Registry employee. In early September 2003, Owens contacted Brenda Adams ("Adams"), a Wellmont Human Resources Specialist, about a job posting dated September 3, 2003, for a PTT for the physical therapy department.[7] Upon checking, Adams determined that the position was for the outpatient department and had been mistakenly posted as a PTT position, when in fact it was a LPTA position. Owens was informed of the mistake.[8] It was not disputed that Owens was not qualified for a LPTA position. In February 2004, a PTT in the

---

[6] Plaintiff objects that the content of the conversation between Vivaldi and Wellmont's vice president as hearsay. To the extent that the reminder to Vivaldi of the productivity analysis and the need for more LPTAs is offered to explain why Vivaldi asked for the posting to be changed, it is not hearsay.

[7] Owens, in her affidavit, claims the position was for the inpatient physical therapy department and references SJPEX. #14. That exhibit, however, does not indicate whether the position was for the inpatient or outpatient department. Whether the position was for the inpatient or outpatient department, however, makes no difference.

[8] Owens disputes this but apparently acknowledges that she was told the position was in a "different department."

inpatient department resigned her employment with Wellmont.  Vivaldi posted the vacancy "internally," and a Registry employee who was 34 years of age was placed in the open PTT position in early April 2004.

## II.    Analysis

### A.    Standard of review

Under Rule 56 of the Federal Rules of  Civil Procedure, a motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.   As the Supreme Court stated in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), this "plain language . . . mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential that party's case, and on which that party will bear the burden of proof at trial."  Thus, the moving party's burden may be discharged by showing that there is an absence of evidence to support the non-moving party's case.  *Id.* at 325.

In order for a non-moving party to defeat a motion for summary judgment, the non-moving party must come forward with persuasive evidence to support  her claim or demonstrate that there is a genuine material factual dispute,  that

is, the non-moving party must produce evidence on which the jury could reasonably find for the non-moving party. *Id.* at 322. "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

In deciding a motion for summary judgment, the court must review the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial is presented when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## B.     Age discrimination

A plaintiff may establish an age discrimination claim by offering either direct or circumstantial evidence of age discrimination. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). Owens offers no direct evidence of age discrimination. The United States Supreme Court has set forth a burden-shifting analytical method for determining whether a plaintiff can make out a claim of age discrimination using circumstantial evidence in *McDonnell Douglas Corp. v.*

*Greene*, 411 U.S. 792 (1973). Under the modified *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case by showing that 1) she was a member of the protected class, 2) she was subjected to an adverse employment action, 3) she was qualified for the particular position, and 4) the successful applicant was a substantially younger person. *See Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir. 1998).

This framework is further modified if a plaintiff is discharged in connection with a reduction in force. In such a case, the plaintiff is not required to plead the fourth prong of the *prima facie* framework because in a reduction of force situation the plaintiff is not in fact replaced. *See Scott v. Goodyear Tire and Rubber Co.*, 170 F.3d 1121, 1126 (6th Cir. 1998). When a workforce reduction is a factor in the decision to terminate, a plaintiff "does not make out a *prima facie* case absent additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990).

A workforce reduction occurs when business considerations cause an employer to eliminate one or more positions within the company. "An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge." *Id.* An employee is not replaced when his or her duties are

assigned or redistributed to another employee or employees already performing related work. *Id.*

If the plaintiff makes out a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas,* 411 U.S. at 802. Then, should the defendant carry this burden, the plaintiff must have the opportunity to prove by a preponderance of the evidence that the legitimate reason(s) offered by the defendant were not its true reason(s), but were a pretext for discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981).

### C.    Owens' claims

Owens makes two claims against Wellmont under the ADEA and Tennessee state law. First, she alleges that her termination from her position as a PTT was because of her age. She also alleges that she was discriminated against after her termination, again because of her age, by Wellmont's refusal to transfer her to, or hire her for, another position. Plaintiff's state law claim is analyzed under the same evidentiary standard as her claim under the ADEA. *See Parker v. Warren County Utility District*, 2 S.W.3d 170, 172 (Tenn. 1999). The Court will deal with each of these allegations *seriatim*.

As an initial matter, however, plaintiff's pleadings and briefs in this case

are woefully inadequate if one assumes that the purpose of pleadings is to focus the Court's attention squarely on the issues at hand, rather than to obfuscate and confuse. Throughout her briefs, plaintiff makes conclusory statements and arguments without any citation to the record upon which she relies to create a dispute about a material fact. The vast majority of the "facts" referred to in plaintiff's memorandum actually reflects only her subjective belief that discrimination occurred in this case, and little more. Plaintiff fails to discuss the elements of her causes of action and to point the Court's attention to how any particular fact relates to a particular element. Such pleadings make it almost impossible for the Court to understand plaintiff's arguments, and it is almost impossible for plaintiff to create a genuine issue as to material fact with that procedure. The purpose of these type pleadings is to persuade the trial court to rule a certain way based on the <u>facts</u> presented and the law cited. These pleadings fail that purpose miserably.

## 1. Owens' Termination

### a. Has Owens established a *prima facie* case of age discrimination?

The only real inquiry with respect to whether Owens has established a *prima facie* case concerns the requirement that she offer additional

circumstantial evidence that she was singled out for discrimination. [9] While Owens makes many arguments concerning matters which she subjectively believes show that she was singled out for age discrimination, the record is devoid of any evidence which creates a genuine issue of material fact in that regard, and the Court finds that the plaintiff has failed to establish a *prima facie* case of age discrimination. The Court will, however, briefly discuss each of those arguments set forth by Owens in that regard.

Although is it difficult to discern from plaintiff's memorandum, she apparently offers as additional circumstantial evidence the following: 1) she had been employed in a PTT position for 33 years and had received excellent performance evaluations; 2) she was discharged just two months after receiving an exemplary performance evaluation from Vivaldi; 3) Michael Corder, a younger PTT whose position was also eliminated, was given alternative employment by Wellmont; 4) Wellmont, after Owens' discharge, "repeatedly" hired younger women to perform PTT duties; 5) the reduction in force actually resulted in only Owens being laid off; and 6) Wellmont's reduction in force policy was "corrupted" when Vivaldi selected three friends in the department to "secretly" evaluate Owens using an evaluation

---

[9] Plaintiff clearly establishes the first three elements of her prima facie case in that she was over 40 years of age at the time of her discharge, and she was qualified for her position as a PTT. The Court's memorandum, therefore, focuses on the fourth element.

system which was biased against older, more tenured employees.

### 1.    The reduction in force

It is difficult to determine exactly what the plaintiff's position is with respect to the reduction in force by Wellmont. On the one hand, Owens admits that a productivity analysis was conducted which indicated that the inpatient department, where she worked, was overstaffed with PTTs. On the other hand, plaintiff correctly notes that a reduction in force can itself be a pretext for discrimination and appears to argue that the productivity analysis and budget restraints faced by Wellmont were not the ultimate reasons for the elimination of her position. However, she points to no facts in the record to support a conclusion that the reduction in force based on the productivity analysis and budgetary restraints was not the true reason for the elimination of two PTT positions in the inpatient department.

The undisputed facts in this case are that in May 2003, a budgetary review of the inpatient department included a productivity analysis to determine whether the inpatient department was overstaffed with PTTs. The productivity analysis revealed, based on the volume of work in the inpatient department, that the department was, in fact, overstaffed with PTTs. The productivity analysis revealed the need for the inpatient department to try, in the future, to hire more licensed physical therapy assistants, which would allow the department to bill for more

services than it could with technicians. Wellmont argues that it was as a result of the productivity analysis and in order to meet budgetary restraints that Wellmont decided to reduce the number of PTTs who worked in the inpatient department by eliminating one open position and to lay-off two full-time employees. Owens, on the other hand, argues that her lay-off was as a result of discrimination and unconnected to the productivity analysis and budgetary restraints. She has produced no evidence, however, to support her contention, and the burden is on the non-moving party to produce evidence showing a genuine dispute of material fact.

Owens' real complaint about the reduction in force appears to be that she believes Wellmont's reduction in force policy was "corrupted" by Vivaldi to disguise his discriminatory motive in plaintiff's lay-off. Owens claims that Vivaldi corrupted Wellmont's RIF policy by "appoint[ing] three friends to a committee called the Leadership Team, let them secretly 'evaluate' the PTTs, give Godsey and the other PTTs he wanted to retain higher scores, locate alternative work for the inept younger PTT (Michael Corder) he was going to transfer out anyway, and discharge Ms. Owens." The problem with plaintiff's theory is that she points to no facts in the record to support her claims. She does argue that Wellmont's reduction in force policy did not specifically provide for the formation of a leadership team. In that she is correct; however, she is incorrect in her argument that the policy prohibited the

formation of such a team.  The policy simply provides that, in the event of a reduction in force, positions to be reduced will be identified by the department director and/or the supervisor.  It does not specify the manner in which that is to be done. Furthermore, the policy sets forth  clear criteria for the ranking of employees based on points generated by evaluation of five separate criteria – years of service, current performance, dependability/reliability, flexibility and job criticality.  This procedure was followed precisely by Vivaldi and the leadership team in identifying the two positions to be eliminated as a result of the reduction in force.  And, although Owens quarrels with the rankings given by the various evaluators and argues that they were not familiar enough with her work to properly evaluate her, she does not show how this differentiates her from other PTTs evaluated or how it shows any discriminatory motive.

She likewise argues that all her prior evaluations had been good, including one done two months before her job was eliminated, and that some of the other employees had, at one time or another, had various correction reports in their personnel history, something she had never had.  Owens concludes from this that the elimination of her job must have been driven by a discriminatory motive rather than any deficiencies in her job performance.  Her argument overlooks, however, the fact that Wellmont's decision to eliminate her position and that of fellow PTT Corder was

based on a <u>comparison</u> of their rankings on the criteria set forth in the reduction in force policy, not on any specific deficiencies in her job performance.  Absent evidence of discriminatory treatment prohibited by the ADEA, this Court will not, and should not, second guess those who make these kinds of decisions and ascribe discriminatory motives where no proof of such exists.

Owens does make one allegation about the ranking procedure which is, on its face, troubling.  She argues that the ranking system discriminates against older, more tenured employees because the maximum score for years of service is three points while the maximum is five points on each of the other criterion.  A closer examination of the ranking procedure, however, simply suggests that Wellmont placed a higher value on job performance and critically related criteria than upon tenure in making reduction in force decisions.  It does also not follow, however, that Owens is correct in her assertion that the ranking system penalizes older, more tenured employees.  It is true that employees with 20 plus years of tenure received three points maximum in the ranking system.  It does not necessarily follow, however, that older employees were discriminated against.  For example, a 54 year old employee with 20 years of service receives three points under the Wellmont ranking system.  On the other hand, a 54 year old employee with nine years of service receives one point in the ranking.  Owens really argues that seniority or job tenure should be valued more

highly than Wellmont has in its ranking system; however, that is a business decision to be made by Wellmont. In addition, the age discrimination laws prohibit discrimination based upon age of the employee, not based upon the seniority of the employee. Thus, the statutes were designed to protect older workers, not tenured workers.

Owens makes one other argument related to the reduction in force. She seems to argue that this was not a true reduction in force because it resulted in the elimination of only two employees in a single department (or, as she sees it, a single employee in a single department since Michael Corder received alternate employment in another department). She offers no factual support for that position and cites no case law which supports such a finding. In fact, case law supports the contrary, *i.e.* that a reduction in force results when <u>one</u> or more employees are terminated for business reasons.

In sum, Owens points to nothing in the record which suggests that the reduction in force was not motivated by the productivity analysis and budgetary restraints and nothing to suggest that her position was not eliminated as part of that reduction in force. While Owens may subjectively believe that the reduction in force was motivated by some sort of discriminatory animus toward her on the part of Vivaldi, her subjective beliefs do not create a genuine issue of material fact and are

thus irrelevant under the summary judgment standard. The arguments raised by Owens with respect to the reduction in force are without merit.

## 2. Owens' prior exemplary performance evaluations

As set forth above, Owens advances a host of circumstances, occurring both before and after her termination, which she contends create a genuine issue of material fact on the fourth element of her *prima facie* case. None of these, however, either standing alone or in combination, shows that Owens was impermissibly singled out for discrimination.

Owens offers her prior work history as evidence to support her claim of discrimination, arguing that she had always received excellent performance evaluations and that she was discharged just two months after receiving an exemplary performance evaluation from Vivaldi. She also notes that she was given no advance notice of the productivity analysis, any plans for a reduction in force, or the formation of the leadership team.

The mere fact that Owens may have been a highly competent employee is insufficient to support a claim that Wellmont impermissibly singled her out for discharge. "The mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a *prima facie* case of age discrimination." *LaGrant v. Gulf & Western Mfg. Co., Inc.*, 748 F.2d

1087, 1090 (6th Cir. 1984). Likewise, "[t]he decision to discharge a qualified, older employee is not inherently suspicious because in a RIF, qualified employees are going to be discharged." *McGrath v. Lockhead Martin Corp.*, 48 Fed. Appx. 543 (6th Cir. 2002). This is especially true under the circumstances of this case where Wellmont retained two employees who were over 50 years of age, and the other employee whose position was eliminated was under 30 years of age. Similarly, the fact that Owens was not aware of the productivity analysis or the reduction in force prior to the date of her termination does not support any inference that her discharge was on the basis of her age or that she was not terminated as part of a legitimate reduction in force.[10]

### 3. Alternative employment

Owens also alleges that Michael Corder, an "inept" PTT had already been given alternate work at the time he was discharged, while no effort was made to provide employment to her. First of all, it is important to note that Wellmont's reduction in force policy provided that employees whose jobs were eliminated during a reduction in force have no recall rights, and an employer generally has no duty to transfer an employee to another position within the company when the employer

---

[10] It actually borders on the incredible that Wellmont would have retained Owens for 33 years, have high praise for her on evaluations and then suddenly, for some unexplained reason, fire her because of her age. It is understandable that plaintiff would be upset after being employed for 33 years and even feel that she has not been treated fairly; however, this does not support a finding of discrimination animus. And, even if Wellmont's decision was not fair in light of Owens' many years of hard work, Wellmont was free to terminate her, absent a showing of discriminatory intent.

reduces the work force for economic reasons.  *Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir. 1986).

        While it is true that Corder was offered alternative employment before or at the time of his termination as a PTT, and Owens was not, Owens does not point to any facts in the record to suggest that such action was discriminatory based on her age.  At best, Owens' affidavit creates an issue of fact concerning the extent of the effort made by Wellmont to place her in an alternate position and about whether or not she was contacted by Wellmont about its efforts.  However, it is undisputed that Owens was unconditionally offered an alternate position as a W-2 Patient Care Technician shortly after she was given notice of her termination on June 23, 2003.  This position was at the same pay grade as plaintiff's prior position, was located on the same floor as plaintiff's prior position, and she would have been able to work with the same people as she had in her prior position.  Rather than five eight hour shifts per week, the W-2 Patient Care Technician position required three twelve  hour shifts per week. Owens' only stated reason for declining the W-2 Patient Care technician position is that she did not believe she could be physically at her best working consecutive twelve hour shifts.  Thus, it appears from the record that both Corder and Owens were offered alternative employment which Corder accepted but Owens did not.  Owens offers nothing other than her personal opinion to support any inference

of age discrimination relative to the issue of alternative employment, and there is no dispute about any material fact here. Her claim as to the difference between her treatment and that of Corder with respect to alternative employment simply does not amount to evidence that Wellmont eliminated her position for impermissible reasons.[11]

Owens does point to a July 19, 2003, e-mail from Vivaldi to Lowe as factual support for her argument that "Lowe and Vivaldi collaborated to save Corder's continued employment" before Corder was laid off and suggests that this is circumstantial evidence from which a jury could infer age discrimination. Her assertion is unsupported by the record. The referenced e-mail does appear to establish that Lowe and Vivaldi had in fact discussed offering Corder another position prior to July 23, 2003; however, the e-mail captioned "WE HAVE A PROBLEM" does not support an inference that Owens was singled out for discrimination. Likewise, Owens points to absolutely nothing in the record to establish any duty on the part of Wellmont to give her advanced notice of its Productivity Analysis or its plans for a reduction in force.

### 4. Wellmont's use of a leadership team for evaluations.

Owens also claims that the reduction in force policy of Wellmont was

---

[11] It is also worth noting that plaintiff, in her deposition, testified that she had no basis for suggesting that age was a factor in how she was treated except for the fact that she was "the one that lost a job."

"corrupted" by use of a leadership team to evaluate the PTTs employed in the inpatient department. As discussed above, she points to no disputed issue of material fact related to the leadership team evaluation or the policy itself. She does seem to suggest, however, that one of the PTTs, described by her as "a young 34 year-old attractive blonde," was treated more favorably in the evaluation process because Vivaldi was attempting to save her job. Again, Owens fails to point to anything in the record which supports such an allegation. In fact, it appears that Vivaldi gave this younger PTT the same score on his evaluation as he did Owens, although a mistake was made in recording the scores on the matrix which was prepared.[12] It is also undisputed that the mistake in recording the scores did not affect the ultimate outcome of the evaluations. Owens cannot point to any facts creating a genuine issue of material fact with respect to the evaluations of plaintiff and the other PTT she refers to.

In sum, Owens has failed to offer any "additional direct, circumstantial, or statistical evidence" that Wellmont eliminated her position for impermissible reason – *i.e*., her age. Plaintiff cannot, therefore, establish the elements of a *prima facie* case, and Wellmont is entitled to summary judgment on Owens' claim of age

---

[12] Even if Vivaldi favored this other employee over Owens, Owens still must offer proof that the favoritism arose from discriminatory intent because of Owens' age, and not some other difference between the two.

discrimination in her termination.

### b.  Was Wellmont's reduction in force pretextual?

Even if the Court were to conclude that Owens has established a *prima facie* case of age discrimination, she still could not prevail unless she could show that Wellmont's proffered reason for termination – the reduction in force – was pretextual. "An employee can show pretext by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805-06 (6th Cir. 1998).  The Sixth Circuit has set forth three methods by which a plaintiff may meet her burden of showing that the reason proffered by the employer is not the real basis for the termination but is merely a pretext for discrimination.

> To make a submissible case on the credibility of his employer's explanation, the plaintiff is 'required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or( 3) that they were insufficient to motivate discharge.'

*Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (quoting *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993)).

Owens has conceded that she cannot utilize the first or third methods because of her admission that a budgetary review and productivity analysis were conducted in May 2003, and that the production analysis revealed that the inpatient

23

department was in fact overstaffed with PTTs. She also admits that the productivity analysis revealed the need for the inpatient department to hire LPTAs in the future to provide services in the inpatient department. Although Owens correctly states in her brief that a reduction in force can in fact be a pretext for discrimination, she makes no real attempt to develop the argument and certainly points to no evidence in the record from which even an inference to that effect can be drawn. There is no evidence in the record which creates any question of material fact regarding Wellmont's proffered reason for Owens' termination, and she points to no evidence in the record which creates a dispute on the question of whether the reduction in force actually motivated her discharge.

### 2. Post discharge discrimination

It appears from Owens' complaint that she not only claims a discriminatory discharge, she also claims that Wellmont's actions toward her after her termination were discriminatory based upon her age as well. The convoluted brief filed by her in opposition to the motion for summary judgment makes it very difficult for this Court to determine the precise nature of the claims being made by the plaintiff. It appears, however, that Owens claims that Wellmont discriminated against her on the basis of age after the elimination of her position by failing to transfer her to a comparable job, denying her open PTT positions, by hiring a younger person to

replace her in the Spring of 2004 and by utilizing younger employees to perform plaintiff's job duties.

In essence, plaintiff's claim is one that Wellmont failed to rehire her for available positions because of her age. In order to make a *prima facie* case of age discrimination in a failure to rehire situation, a plaintiff must establish that she is a member of the protected age group, that she is qualified for the position, that she applied for the available position or can establish that the employer was otherwise obligated to consider her, and that the position went to a younger individual outside the protected class or other reasonable evidence exists for inferring that she was denied a position because of her age. *Wanger v. Gray*, 872 F.2d 142, 145 (6th Cir. 1989); *Wilkins v. Eaton Corp.*, 790 F.2d 515, 520 (6th Cir. 1986).

As an initial matter, as discussed above, Wellmont was under no obligation to transfer Owens to a comparable position.[13] Rights providing for recall or rehiring preferences "are not inherent in an employee-employer relationship, but rather, exist only to the extent they are created by contract." *N.L.R.B. v. District 23*, UMW 921 F.2d 645, 649 (6th Cir. 1990). Additionally, an employer is not required

---

[13] Plaintiff argues in her brief that the W-2 position offered to her by Wellmont was not a "substantially equivalent position" to her former PTT position. Plaintiff, however, confuses the legal concept of a "substantially equivalent position" which, in the context of discrimination cases, refers only to plaintiff's duty to mitigate damages. Even if Wellmont gratuitously assumed the responsibility of attempting to locate alternative employment for Owens, nothing in the record here suggests that Wellmont had any obligation to transfer her to a "substantially equivalent position".

to inform former employees of all openings which the former employee might be qualified to perform to avoid liability for an age discrimination charge. *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1472 (6th Cir. 1990). Owens has not alleged, nor has she attempted to prove, that younger employees were notified of these other openings.

Wellmont argues that the Court should never even consider whether Owens can establish a *prima facie* case for failure to rehire since, according to Wellmont, no PTT positions were available to be filled. While acknowledging that PTT positions were posted in the Fall of 2003, Wellmont argues that these postings were supposed to be for LPTAs and were mistakenly posted. Wellmont also argues that it "has never filled" a PTT position. Even if Wellmont's assertion that the PTT positions posted in the Fall of 2003 were mistakes, the record does not clearly establish that no PTT positions were filled or available to be filled. Viewing the proof in the light most favorable to Owens on that issue, a PTT position was filled by Kim Mathes in April 2004,[14] a PTT position was filled by Aleshia Chapman on May 1, 2004; Ronnie Absher was hired as a PTT on December 28, 2003; Sara Lynn Lowe was hired on June 2, 2004; and Billy Joe Range was hired on May 14, 2004.

---

[14] Ms. Mathes, a Wellmont registry employee, applied for the PTT position vacated by Nancy Godsey, which was posted internally, in February 2004 and, in April 2004, transferred from her registry position to the vacant PTT position. Wellmont seems to argue, without citation to any authority, that a transfer is not the same as hiring someone to fill the position. Wellmont also argues that a plaintiff is not replaced when individuals are hired for positions which arise after a reduction in force, citing *Williams v. Tyco Elec.Corp.,* 161 Fed. Appx. 526, 534-35 (6th Cir. 2006). While this is a correct statement of the law, it has no relevance to Owens' failure to rehire claim.

Wellmont concedes, at least by implication, that the first two elements of a *prima facie* case, *e.g*., that Owens is a member of the protected age group and that she is qualified for the PTT positions, are established. In any event, it is clearly established that Owens was more than 54 years of age and clearly qualified for a PTT position since she had done the job for more than three decades. Likewise, given the evidence set forth in the last paragraph, Owens quite easily establishes a genuine issue of material fact on the fourth element of her *prima facie* case, *e.g*. that the positions went to a younger individual.

It is the third element, that she applied for the position or can establish that Wellmont was otherwise obligated to consider her, that is problematic for Owens. Where an employer reduces its work force for economic reasons, it incurs no duty to transfer an employee to another position or to recall laid-off employees when a new position opens. *Almond v. ABD Industrial Sys., Inc.*, 56 Fed. Appx. 672, 678 (6th Cir. 2003). In addition, Wellmont's policy on temporary/permanent reductions in force explicitly provides that an employee terminated pursuant to the policy has no recall rights. An initial inquiry in any failure to rehire case is whether the employer is under any obligation to consider the plaintiff for the position. Generally, if one formally applies for the position, then the employer is under an obligation to consider the individual if she is otherwise qualified. *Wanger*, 872 F.2d at 146. It is undisputed in

this case that Owens never formally applied for any of the positions in question. While Owens did express a generalized interest in a PTT position, such a generalized expression of interest is not functionally equivalent to an application. *Williams v. Hevi-Duty Electric Co.*, 819 F.2d 620, 630 (6th Cir.), *cert. denied*, 484 U.S. 970 (1987). Thus, Owens' failure to apply for any of these positions is fatal to her *prima facie* case unless she can show a basis for excusing the lack of a formal application.

It is clear that Wellmont was well aware of Owens' desire for a PTT position, at least during the first month or six weeks after her termination on July 24, 2003. By her own admission, however, she began to look for work elsewhere after that time.[15] Although Owens' affidavit does not state a specific time when she began looking elsewhere for work, her statement is consistent with Mack Lowe's affidavit which states that plaintiff came to his office sometime after being offered the W-2 patient care technician position (which apparently occurred in late June or at least prior to July 2 since July 2, was the first scheduled workday on the schedule Owens' picked up from McGee's office) and told him she was looking of a job at another facility. The job seeker must make a reasonable attempt to demonstrate to the

---

[15] Paragraph 49 of Owens' affidavit states: "Frustrated with having all of my job inquiries for any type of PTT work repeatedly rejected by both Adams and Lowe I finally began looking elsewhere for work."

employer that she is interested in the job. *Grant v. Harcourt Brace College Publishers*, 191 F.3d 452 (Table), 1999 WL 717982, ** 4 (6th Cir. (Ohio)). Given Owens' deposition testimony about the limited nature of her interest in employment at Wellmont and that she turned down the W-2 position offered to her by Wellmont in late June 2003, she made no reasonable attempt to demonstrate to Wellmont that she was interested in any of the PTT positions referenced above. Absent proof that any application would have been futile or overwhelming evidence of pervasive discrimination in all aspects of the employer's internal employment practices, her failure to apply for these positions cannot be excused. *See Bacon v. Honda of America Mfg, Inc.*, 370 F.3d 565, 576 (6th Cir. 2004). For this reason, plaintiff cannot establish a *prima facie* case of failure to rehire and her claim must be dismissed.

Furthermore, to the extent Owens claims that Wellmont discriminatorily refused to transfer her to another "comparable" position, her claim fails for a very simple reason. Wellmont did in fact offer to transfer her to another patient care position, comparable in pay to her PTT position, on the same floor of the hospital and with many of the same staff members she had previously worked with. The only real difference in the two positions was the work schedule associated with each. In the PTT position, Owens worked five eight hour days per week. In the W-2 position, she

would have worked three twelve hour shifts, or four hours less per week. Her only reason given for declining the transfer was that she did not believe she could be as productive working a twelve hour schedule three days per week as she might have been working an eight hour schedule five days per week. The very fact that Wellmont offered her a comparable position dispels any suggestion that Wellmont's actions were motivated by a desire to terminate her or otherwise discriminate against her because of her age. While there is a dispute between the parties about whether other jobs were also offered to Owens, this dispute is not material. Simply put, plaintiff was not transferred to another position because she refused to accept it.

## III.    Conclusion

For the reasons set forth above, Wellmont's motion for summary judgment will be granted and plaintiff's complaint dismissed. More specifically, Owens has failed to establish that there is a genuine issue of material fact related to any of her claims of age discrimination in her employment by Wellmont. Accordingly, all claims relating to the elimination of her position and her termination from employment with Wellmont, as well as her discrimination claims related to any transfer or re-employment by Wellmont, must be dismissed as a matter of law. Since her THRA claims are judged by the same standards as her ADEA claims, her THRA

claims must likewise be dismissed as a matter of law.  A judgment in favor of the

defendant will be entered.

SO ORDERED.

ENTER:


<u>s/J. RONNIE GREER</u>
UNITED STATES DISTRICT JUDGE